IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIVERSITY DERMATOLOGY AND VEIN CLINIC, LLC AND ST. JOSEPH DERMATOLOGY AND VEIN CLINIC, PLLC, <br><br>Plaintiffs, <br><br>v. <br><br>CERNER HEALTHCARE SOLUTIONS, INC., <br><br>Defendant. | Case No. 22-cv-00379 <br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Defendant Cerner Healthcare Solutions, Inc. moves the Court under Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, to dismiss Plaintiffs' Complaint based on the parties' arbitration agreement. Alternatively, Cerner requests that the Court transfer the suit to the United States District Court for the Western District of Missouri under 28 U.S.C. § 1406. For the reasons stated herein, Cerner's motion [10] is denied without prejudice. Plaintiffs' motion for reconsideration regarding the order on motion for leave to file and to strike [24] is denied without prejudice as moot.

I. Background

In this case, Plaintiffs University Dermatology and Vein Clinic, LLC (UDVC) and St. Joseph Dermatology and Vein Clinic, PLLC (SJDVC), plead claims against Cerner for breach of contract, negligence, and participation in breach of trust. (Compl., Dkt.

1

1-1). Plaintiffs allege that their suit arises from "Cerner's breaches of duties owed to UDVC and SJDVC as their electronic health records provider" because Cerner allowed third parties to access Plaintiffs' patient electronic medical records. (*Id*. p.1).

Vassilios A. Dimitropoulos, M.D. is the majority member interest holder and manager of both UDVC and SJDVC. (*Id*. ¶¶ 1–2). Before 2016, Dimitropoulos and Clarence W. Brown, Jr. were the principal owners of a medical dermatology practice providing services through two entities, University Dermatology (Corp.) and St. Joseph's Dermatology, LLC (referred to as the "Pre-2016 Practice"). (*Id*. ¶ 5). Cerner "was a supplier of health care information technology solutions and tech-enabled services" to medical practices. (*Id*. ¶ 6). Cerner provided the Pre-2016 Practice with all of its clinical, financial and operational technology needs, through contracts entered into with St. Joseph's Dermatology, LLC. (*Id*. ¶ 7).

In May 2016, Brown filed a dissolution action in Michigan against several defendants including Dimitropoulos and University Dermatology (Corp.) and St. Joseph's Dermatology, LLC. (*Id*. ¶ 8). Not long after, Brown set up competing dermatology practices in Michigan and Illinois. (*Id*. ¶ 9). In September 2016, the Michigan court entered an order appointing a receiver and requiring the Pre-2016 Practice entities to cease operations. (*Id*. ¶¶ 10–12). In November 2016, the receivership property was sold at an auction. (*Id*. ¶¶ 13–14). Dimitropoulos was the successful bidder for all of the non-real property originally owned by the Pre-2016 Practice. (*Id*. ¶ 14). Pursuant to the sale, the business assets, including all patient records of the Pre-2016 Practice, transferred to UDVC and SJDVC. (*Id*. ¶ 18). UDVC

asked Cerner for a new medical practice system similar to the Cerner system used by the Pre-2016 Practice. (*Id.* ¶ 21). Instead of doing this, Plaintiffs allege, Cerner continued the Pre-2016 Practice medical practice system, merely changing the ownership and billing of the system to UDVC. (*Id.* ¶ 22). This failure, Plaintiffs claim, gave Brown and his agents unauthorized access to all of UDVC's medical practice records for both the pre-2016 Practice and Dimitropoulos' new dermatology practices. (*Id.*) Brown sought these records to compete with Dimitropoulos and steal or attempt to steal patients, and Cerner benefited by earning significant fees from Brown. (*Id.* ¶¶ 26, 27, 29). Dimitropoulos discovered the unauthorized access in 2017, and later discovered that Cerner was charging UDVC for services that had been ordered by Brown, not UDVC. (*Id.* ¶¶ 30, 32). In 2020, UDVC nevertheless paid Cerner to avoid business disruption, and at that time, requested expiration dates for "all purported Cerner contracts." (*Id.* ¶ 33). UDVC found a new provider, and subsequently "requested that Cerner cancel all services except for one provider to be able to access to Specialty PM service"; Cerner did not respond and instead continued its excessive billing. (*Id.* ¶¶ 34, 35).

Plaintiffs claim that Cerner's failures "under the oral and/or written contracts with UDVC constitute material breaches of the contracts." (*Id.* ¶ 45). And "[a]s a direct and proximate result of Cerner's breaches of the contracts, UDVC and SJDVC have been damaged in an amount to be proven at trial in excess of $300,000. . . ." (*Id.* ¶ 49). Plaintiffs seek a "declaration that any and all contracts with Cerner are null

3

and void and that UDVC and SJDVC owe Cerner no further fees and costs pursuant to those contracts. . . ." (*Id.* p. 13).

On December 1, 2021, Plaintiffs filed this suit in state court. On January 24, 2022, Cerner removed the case to this court, and thereafter filed the instant motion. [10]; [11]. In its motion, Cerner argues that the parties' contract contains a mandatory arbitration agreement which the Court must enforce.

**II.     Standard**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). The FAA's policy favoring arbitration "is to make 'arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quotation omitted).

"When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of

4

contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to an opposing party's refusal to arbitrate despite a written agreement for arbitration, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party

5

opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

### III. Analysis

A party seeking to compel arbitration must demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D.*, 885 F.3d at 1060. The only issue here is whether there is an enforceable agreement to arbitrate.

Plaintiffs dispute that "there is a valid and enforceable contract between one or both of plaintiffs and Cerner that requires arbitration." (Dkt. 17 at 2). State law controls the determination of this issue. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Missouri law, an enforceable contract requires an offer, acceptance, and consideration. *Beck v. Shrum*, 18 S.W.3d 8, 10 (Mo. Ct. App. 2000).[1]

In their complaint, Plaintiffs allege that Cerner "provided its services to UDVC and SJDVC pursuant to oral and/written contracts with UDVC," and claim that Cerner breached those contracts. (Compl. at ¶¶ 40, 43–45). Plaintiffs attach to their complaint "[d]ocuments purporting to represent the contracts signed by UDVC for its new Cerner medical practice system for UDVC and SJDVC," but deny those documents were valid and enforceable contracts between the parties. (*Id.* ¶ 21). A plaintiff claiming breach of contract is not generally required to attach the operative

---

[1] Although the parties do not address choice of law, the 2009 Agreement provides that Missouri law governs disputes arising from therefrom.

6

contract to a complaint. *See Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 740 (N.D. Ill. 2020).

Attached to Cerner's motion are: (1) a Cerner Software License, Hardware Purchase, Services and Support Agreement between Cerner and St. Joseph Dermatology, signed and dated August 3, 2009 (2009 Agreement) (Dkt. 13, Exh. A); and (2) a General Addendum between Cerner and University Dermatology and Vein Clinic LLC, dated December 6, 2016 (2016 Addendum). (*Id.*, Exh. B).[2] The 2009 Agreement contains the following mandatory arbitration provision in paragraph 16:

> **ARBITRATION.** In the event of a dispute between the parties, PowerWorks [Cerner] and Client agree to work cooperatively to resolve the dispute amicably at appropriate, mutually determined management levels. In the event that a resolution at such management levels does not occur and a party wishes to escalate to a formal dispute resolution forum, such party will submit the dispute to binding arbitration at a site in the state of the principal place of business of the non-petitioning party under the then-prevailing rules of the American Arbitration Association, Inc., a New York Corporation. . . .

(*Id.*, Exh. A). The 2016 Addendum "incorporate[s], by reference [the 2009 Agreement]." (*Id.*, Exh. B). Here, the question is whether the 2009 Service Agreement and the 2016 Addendum attached to Cerner's motion establish an enforceable arbitration agreement between the parties.

In challenging the enforceability of the arbitration agreement, Plaintiffs argue that: (1) Cerner failed to attach affidavits to its motion regarding the 2009 Agreement and 2016 Addendum; (2) the 2009 Agreement, signed by Brown, not Dimitropoulos, was executed by a person no longer an owner of the company (and not a party to this

---

[2] Brown signed the 2009 Agreement on behalf of St. Joseph, and Dimitropoulos signed the 2016 Addendum on behalf of UDVC.

7

lawsuit); (3) the 2016 Addendum, signed by UDVC, does not "redefine[] 'Client' in the context of the 2009 Agreement"; and (4) the 2016 Addendum is not signed by Cerner. The first challenge is dispositive of this motion.

Plaintiffs argue that Cerner failed to provide affidavits to substantiate that the 2009 Agreement and 2016 Addendum are enforceable. A party seeking to enforce an arbitration agreement must authenticate the agreement, though the bar "is not high". *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015). Federal Rule of Evidence 901 applies. *Id*. That rule states: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

Here Plaintiffs attached certain documents to its complaint, but those documents did not contain either the 2009 Agreement or the 2016 Addendum, and Plaintiffs expressly deny that a valid contract exists between the parties (in seeming contradiction to their assertion of an oral and/or written breach of contract claim). In moving to dismiss, Cerner attached the 2009 Agreement and 2016 Addendum containing the arbitration provision but did not authenticate those documents with an affidavit or declaration. [10, 11, 13]. As the court in *Pearson* explained "[d]istrict courts routinely consider agreements containing arbitrations provisions referred to within, but not attached to, the complaint, but *only if* the proponent of arbitration properly authenticates the document containing an arbitration provision through an affidavit or otherwise." 123 F. Supp. 3d at 1073 (emphasis added). Even though

8

Plaintiffs raised this issue in their response brief, Cerner did not address the argument or supplement the record with an affidavit authenticating the documents in reply. [19]. *Cf. Giuliano as Tr. for RIH Acquisitions NJ, LLC v. Sci. Games Corp.*, No. 20-CV-05262, 2022 WL 1591651, at *4 (N.D. Ill. May 19, 2022) (the existence and authenticity of the agreements were established because the record "contain[ed] an affidavit by someone who witnessed the signing of the agreements, a copy of the signed agreements, the agreements' full arbitration clauses, and a self-authenticating contract"). Thus, based on the current record, the Court cannot find that a valid agreement to arbitration exists among the parties.

Cerner argues that the arbitration agreement should be deemed part of Plaintiff's pleading because the parties' agreements "are referred to in Plaintiffs' complaint and are central to Plaintiffs' claims." (Dkt. 19 at 3). As an initial matter, this argument was raised only in Cerner's reply brief and therefore is waived. *See, e.g., Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012). Regardless, it is Cerner's burden to demonstrate that a valid arbitration agreement exists. *A.D.*, 885 F.3d at 1060. Because Plaintiffs' complaint did not attach any documents showing the existence of such an agreement, the law required Cerner to come forth with evidence authenticating the arbitration agreements it seeks to enforce against Plaintiffs. Because Cerner has not done so, it has failed meet its initial burden on its motion to dismiss based on an arbitration agreement.

Because the Court is denying Cerner's motion, Plaintiffs' motion [24] is denied without prejudice as moot.

## IV. Conclusion

For the stated reasons, Cerner's motion [10] is denied without prejudice. Plaintiffs' motion for reconsideration regarding the order on motion for leave to file and to strike [24] is denied without prejudice as moot.

E N T E R:

Dated: August 26, 2022

_____
MARY M. ROWLAND
United States District Judge