IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIVERSITY DERMATOLOGY AND VEIN CLINIC, LLC AND ST. JOSEPH DERMATOLOGY AND VEIN CLINIC, PLLC, | Case No. 22-cv-00379 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| CERNER HEALTHCARE SOLUTIONS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Defendant Cerner Healthcare Solutions, Inc. moves the Court under Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, to dismiss Plaintiffs' Complaint based on the parties' arbitration agreement. Alternatively, Cerner requests that the Court transfer the suit to the United States District Court for the Western District of Missouri under 28 U.S.C. § 1406. This Court previously denied without prejudice Cerner's motion. For the reasons stated herein, Cerner's renewed motion to dismiss [46] is granted.

### I. Background

Plaintiffs University Dermatology and Vein Clinic, LLC (UDVC) and St. Joseph Dermatology and Vein Clinic, PLLC (SJDVC), plead claims against Cerner for breach of contract, negligence, and participation in breach of trust. (Compl., Dkt. 1-1). Plaintiffs allege that their suit arises from "Cerner's breaches of duties owed to UDVC

1

and SJDVC as their electronic health records provider" because Cerner allowed third parties to access Plaintiffs' patient electronic medical records. (*Id.* p.1). This opinion presumes familiarity with this Court's prior opinion [30] and the procedural history of this case.

Vassilios A. Dimitropoulos, M.D. is the majority member interest holder and manager of both UDVC and SJDVC. (Compl. ¶¶ 1–2). Before 2016, Dimitropoulos and Clarence W. Brown, Jr. were the principal owners of a medical dermatology practice providing services through two entities, University Dermatology (Corp.) and St. Joseph's Dermatology, LLC (referred to as the "Pre-2016 Practice"). (*Id.* ¶ 5). Cerner "was a supplier of health care information technology solutions and tech-enabled services" to medical practices. (*Id.* ¶ 6). Cerner provided the Pre-2016 Practice with all of its clinical, financial and operational technology needs, through contracts entered into with St. Joseph's Dermatology, LLC. (*Id.* ¶ 7).

In May 2016, Brown filed a dissolution action in Michigan against several defendants including Dimitropoulos and University Dermatology (Corp.) and St. Joseph's Dermatology, LLC. (*Id.* ¶ 8). Not long after, Brown set up competing dermatology practices in Michigan and Illinois. (*Id.* ¶ 9). In September 2016, the Michigan court appointed a receiver and required the Pre-2016 Practice entities to cease operations. (*Id.* ¶¶ 10–12). In November 2016, Dimitropoulos was the successful bidder at an auction for all of the non-real property originally owned by the Pre-2016 Practice. (*Id.* ¶ 14). Pursuant to the sale, the business assets, including all patient records of the Pre-2016 Practice, transferred to UDVC and SJDVC. (*Id.* ¶ 18). UDVC

2

asked Cerner for a new medical practice system similar to the Cerner system used by the Pre-2016 Practice. (*Id.* ¶ 21). Instead of doing this, Plaintiffs allege, Cerner continued the Pre-2016 Practice medical practice system, merely changing the ownership and billing of the system to UDVC. (*Id.* ¶ 22). Plaintiffs claim this gave Brown and his agents unauthorized access to all of UDVC's medical practice records, allowing Brown to steal or attempt to steal patients from Dimitropoulos, and Cerner benefited by earning significant fees from Brown. (*Id.* ¶¶ 26, 27, 29). Dimitropoulos later discovered that Cerner was charging UDVC for services that had been ordered by Brown, not UDVC. (*Id.* ¶¶ 30, 32). In 2020, UDVC nevertheless paid Cerner to avoid business disruption and requested expiration dates for "all purported Cerner contracts." (*Id.* ¶ 33). UDVC found a new provider, and "requested that Cerner cancel all services except for one provider"; Cerner did not respond and instead continued its excessive billing. (*Id.* ¶¶ 34, 35).

Plaintiffs claim that Cerner's failures "under the oral and/or written contracts" are "material breaches of the contracts." (*Id.* ¶¶ 45, 49). Plaintiffs ask the Court to declare as null and void "any and all contracts with Cerner." (*Id.* p. 13). In its motion Cerner argues that the parties' contract contains a mandatory arbitration agreement. This Court previously denied without prejudice Cerner's motion because Cerner did not provide the requisite affidavits to substantiate the 2009 Agreement and 2016 Addendum. [30]. Cerner's renewed motion is now adequately supported and Plaintiffs

3

have not established a triable issue of fact on the arbitration agreement. The Court therefore grants the dismissal.[1]

## II. Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). The FAA's policy favoring arbitration "is to make 'arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quotation omitted).

"When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of

---

[1] Although styled as a Rule 12(b)(3) motion, the "doctrine of *forum non conveniens* is the correct procedural mechanism to enforce [an] ... arbitration clause." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 701 (7th Cir. 2022) (cleaned up). *See also Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560–61 (7th Cir. 2021) (holding that the defendant "should have brought a motion under the forum non conveniens doctrine to enforce" the arbitration agreement, but "whether [the plaintiff]'s motion is analyzed as one under Rule 12(b)(3) or one under forum non conveniens does not impact the substantive analysis").

4

contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to an opposing party's refusal to arbitrate despite a written agreement for arbitration, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* The court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor but "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

5

### III. Analysis

To prevail on its motion Cerner must demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D.*, 885 F.3d at 1060. Plaintiffs do not dispute that their claims fall within the scope of the arbitration agreement or that they have refused to arbitrate. Plaintiffs also do not dispute that the arbitration provision at issue is mandatory (though they contend they are not subject to it). The only issue then is whether there is an enforceable agreement to arbitrate.

State law controls the determination of this issue. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Missouri law, an enforceable contract requires an offer, acceptance, and consideration. *Beck v. Shrum*, 18 S.W.3d 8, 10 (Mo. Ct. App. 2000).[2]

Cerner argues that the August 3, 2009, Software License, Hardware Purchase, Services and Support Agreement ("2009 Agreement") contains a mandatory arbitration provision and an addendum, signed by Dr. Dimitropoulos in 2016, incorporated the 2009 Agreement and its arbitration provision. Plaintiffs respond that these are two separate agreements, that Dimitropoulos did not sign the 2009 Agreement, and that the 2016 Addendum, which he did sign, does not bind Plaintiffs to the arbitration provision.

---

[2] The 2009 Agreement provides that Missouri law governs disputes arising from therefrom. The Court previously applied Missouri law and Cerner relies on Missouri law as before. Plaintiffs rely on Illinois law without explanation, but do not raise any choice of law issue. [68 at 10]. The Court therefore applies Missouri law.

6

Attached to Cerner's motion is the sworn affidavit of Teresa Waller, Senior Director of Cerner's Contract Management Office organization. (Waller Aff. (Dkt. 47-1). Waller attests that she has managed that office since 2003 and she is the custodian of records for Cerner's contract documents. *Id*. Attached to her affidavit are: (1) a Cerner Software License, Hardware Purchase, Services and Support Agreement between Cerner and St. Joseph Dermatology, signed and dated August 3, 2009 (2009 Agreement) (Dkt. 48, Exh. A); and (2) a General Addendum between Cerner and University Dermatology and Vein Clinic LLC, dated December 6, 2016 (2016 Addendum). (*Id*., Exh. B).[3] Waller attests to the authenticity of both of these documents.

The 2009 Agreement contains the following arbitration provision in paragraph 16:

> **ARBITRATION.** In the event of a dispute between the parties, PowerWorks [Cerner] and Client agree to work cooperatively to resolve the dispute amicably at appropriate, mutually determined management levels. In the event that a resolution at such management levels does not occur and a party wishes to escalate to a formal dispute resolution forum, such party will submit the dispute to binding arbitration at a site in the state of the principal place of business of the non-petitioning party under the then-prevailing rules of the American Arbitration Association, Inc., a New York Corporation. . . .

(*Id*., Exh. A). The 2016 Addendum states that it is the addendum to the 2009 Agreement, and to the extent there is any conflict between the Addendum and Agreement, the Addendum controls but "only with respect to the services." (*Id*., Exh. B).

---

[3] Brown signed the 2009 Agreement on behalf of St. Joseph Dermatology, and Dimitropoulos signed the 2016 Addendum on behalf of UDVC.

7

According to Plaintiffs, however, the arbitration agreement is not binding because the plaintiffs did not exist in 2009 and neither plaintiff is a "successor" to St. Joseph's Dermatology. Plaintiffs also contend that Dimitropoulos did not sign the 2009 Agreement and was not aware that in signing the 2016 Addendum, the terms of the 2009 Agreement would be binding. These arguments are not persuasive.

First, Cerner has established the authenticity of the 2009 Agreement and 2016 Addendum. Plaintiffs do not challenge the authenticity of either document. The 2009 Agreement expressly says that it is "binding upon and will inure to the benefit of the parties and their permitted successors." (Dkt. 48, Exh. A, ¶ 1.2). The 2016 Addendum expressly references the 2009 Agreement on the first page, first paragraph, and states that it is an Addendum *to the* 2009 Agreement. (*Id*. Exh. B, p. 1). Plaintiffs do not argue that any language in either agreement is ambiguous. Nor do they explain why the plain language of these agreements does not control. As one Missouri court recently reiterated, "[t]he cardinal rule for interpreting a contract is to effectuate the parties' intent at the time of contracting." *Shade-Schaefer v. City of Eureka*, No. ED 110581, 2023 WL 3311501, at *5 (Mo. Ct. App. May 9, 2023). So "[t]o ascertain the original intent of the parties to a contract, we give the words their natural, ordinary, and common-sense meaning. Where the terms in a contract are unambiguous, we will enforce the contract as written without resorting to canons of construction." *Id*. (cleaned up). In this case, enforcing the contracts as written requires enforcing the mandatory arbitration provision set forth in the 2009 Agreement and made a part of the 2016 Addendum to that agreement.

Next Plaintiffs contend that signing of the 2009 Agreement by Dimitropoulos's former business partner means that the terms of that agreement do not apply to the 2016 Addendum. Plaintiffs acknowledge Brown was Dimitropoulos's former business partner (Dkt. 68, Exh. 1), and in their own complaint, state that Dimitropoulous and Brown were together "owners of a medical dermatology practice that provided services…through two entities, University Dermatology (Corp.) and St. Joseph's Dermatology LLC." Compl. ¶ 5. Plaintiffs do not cite any authority that the creation of new entities vitiated the prior agreement where, as here, the 2016 agreement expressly stated that it was an addendum to the 2009 Agreement and incorporated the earlier agreement's terms.[4]

Finally, Dimitropoulos's claim that he had never "seen or read the 2009 Agreement" [68 at 9] is not convincing. In his affidavit he explains at the time he signed the 2016 Cerner contracts, he was under stress because of the business transition. (Dkt. 68, Exh. 1). This is understandable, however,

> Missouri has long recognized that a person signing an agreement has a duty to read it. Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing.

*Lopez v. GMT Auto Sales, Inc.*, 656 S.W.3d 315, 321 (Mo. Ct. App. 2022) (cleaned up). *See also Farmland Indus., Inc. v. Bittner,* 920 S.W.2d 581, 584 (Mo. Ct. App. 1996) ("Absent a showing of fraud, a party who is capable of reading and

---

[4] *Network After Work, Inc. v. Zenvoy, LLC*, No. 20-CV-6085, 2021 WL 2453068 (N.D. Ill. June 16, 2021), relied on by Plaintiffs, for example, where the defendant challenged venue, did not involve a contract where the entities bound by the contract changed.

9

understanding a contract is charged with the knowledge of that which he or she signs.").

Considering Cerner's renewed motion and the record before the Court, the Court finds that Cerner has met its burden to show there is an enforceable arbitration agreement. And Plaintiffs for their part have not provided specific evidence demonstrating a material factual dispute for trial. This result is warranted particularly given the Court's obligation to "give effect to the contractual rights and expectations of the parties," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010), as well as the "liberal federal policy favoring arbitration agreements" *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). The Court therefore grants Cerner's motion to dismiss. S*ee Rock Hemp*, 51 F.4th at 701.

## IV. Conclusion

For the stated reasons, Cerner's motion to dismiss [46] is granted. This case is dismissed. Civil case terminated.

E N T E R:

Dated: June 12, 2023

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States District Judge

10